## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                       No. CR 15-4275 JB

CHRISTOPHER GARCIA,

        Defendant.

### MEMORANDUM OPINION AND ORDER[1]

       **THIS MATTER** comes before the Court on the Defendant's Opposed Renewed Motion to Declare Case Complex, filed September 29, 2016 (Doc. 114)("Renewed Motion to Declare Complex"). The Court held a hearing on October 25, 2016. The primary issue is whether, pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii), the nature of the prosecution, the number of Defendants, or the existence of novel questions of fact or law, make this case so complex that it is unreasonable to expect the Defendant to adequately prepare for trial within the normal time limits established by 18 U.S.C. § 3161(c)(1). Because the Court maintains its conclusion that the present prosecution does not warrant a complex designation at this time, the Court will deny the Motion to Declare Complex, without prejudice to its renewal at a later date.

---

[1]In its Sealed Memorandum Opinion and Order, filed November 23, 2016 (Doc. 136)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court publishes a public version. Sealed MOO at 1 n.1. The Court gave the parties 14 calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

## FACTUAL BACKGROUND

For the purpose of its consideration of the Renewed Motion to Declare Complex, the Court pulls its recitation of the facts from the Indictment, filed December 1, 2015 (Doc. 1); the Superseding Indictment, filed March 16, 2017 (Doc. 48); and the Court's Memorandum Opinion and Order, filed November 16, 2016 (Doc. 133)("MOO").  The Court has already, on another occasion, provided a detailed explanation of the charges and the history of the investigations giving rise to this case.  See United States of America v. Angel DeLeon, et al., No. CR. 15-4268 JB, 2016 WL 3124632 (D.N.M. May 27, 2016)(Browning, J.).  The facts that specifically pertain to the present case are as follows.

## PROCEDURAL HISTORY

In March, 2015, the Federal Bureau of Investigation renewed investigation of the Syndicato Nuevo Mexico ("SNM") prison gang.  See MOO at 2-3.  "SNM's recent activities in a conspiracy to murder high-ranking New Mexico Corrections Department Officials inspired the investigation, which included both old murders and new murder conspiracies, in addition to the racketeering activities of current gang members that were out of custody."  MOO at 2 (internal quotations omitted).  Accordingly, in response to the investigation, a federal grand jury indicted Defendant Christopher Garcia in three cases.  In this case -- the drug case -- the grand jury originally charged Garcia -- and only Garcia -- with four counts for charges of (i) Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (ii) Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (iii) Distribution of 100 Grams and More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  See Indictment at 1-2.  In a related case -- United States v. DeLeon -- which the Honorable Ken Gonzales, District Judge for the United States District of New Mexico, declared complex on January 11, 2016, Garcia is a

Defendant, and has been indicted and charged with: (i) Violent Crimes in Aid of Racketeering ("VICAR")(Conspiracy to Murder), in violation of 18 U.S.C. §§ 1959(a)(5); (ii) Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (iii) Using and Carrying a Firearm During and in Relation to a Crime of Violence Conspiracy to Commit Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 924(c). See United States v. Deleon, No. CR. 15-4268 JB, Superseding Indictment, filed April 21, 2016 (Doc. 367). That case names thirty Defendants, all alleged SNM members or associates, who have allegedly engaged in Violent Crimes in Aid of Racketeering activity, under 18 U.S.C. § 1959 -- making it the "VICAR" case -- whereas the present case solely makes allegations related to Garcia's involvement in drug trafficking. MOO at 2. Some of the Defendants in that case were death penalty eligible and have had learned counsel appointed. See United States v. Deleon, No. CR. 15-4268 JB, The United States' Notice of Intent Not To Seek a Sentence of Death, filed June 6, 2016 (Doc. 567)(stating that it would not seek a death sentence against twenty-one death-penalty eligible Defendants).

Garcia has also been indicted in United States of America v. Anthony Baca et al., No. CR 16-1613 JB (D.N.M.)(Browning, J.), which names twelve Defendants, all SNM members or associates, who have allegedly engaged in a racketeering conspiracy, under 18 U.S.C. § 1962(d) -- making it the "racketeering case." United States v. Baca, No. CR 16-1613, Sealed Indictment, filed April 21, 2016 (Doc. 1). The indictment in United States v. Baca also makes allegations of Violent Crimes in Aid of Racketeering activity; Garcia is charged with: (i) Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d); and (ii) Violent Crimes in Aid of Racketeering (Murder), in violation of 18 U.S.C. § 1959(a)(1). See United States v. Baca, No. CR 16-1613, Sealed Indictment, filed April 21, 2016 (Doc. 1). Garcia, and two other Defendants, are named

in <u>United States v. Baca</u> and were originally death penalty eligible, and the Court appointed learned counsel for them.  <u>See United States v. Baca</u>, No. CR 16-1613, The United States' Notice of Intent Not To Seek a Sentence of Death, filed September 13, 2016 (Doc. 210)(stating that it would not seek a death sentence against the three Defendants).  The Court has declared that case complex.  <u>See United States v. Baca</u>, No. CR 16-1613, Memorandum Opinion and Order, filed October 20, 2016 (Doc. 238).

On March 17, 2016, a federal grand jury returned a superseding indictment in this case against Garcia alleging six charges of (i) Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (ii) Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (iii) Distribution of 100 Grams and More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (iv) Possession with Intent to Distribute 100 Grams and More of Heroin, and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2; and (v) Possession with Intent to Distribute Marijuana, and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 18 U.S.C. § 2.  <u>See</u> Superseding Indictment at 1-2. According to the United States, 1,389 pages of discovery and seven audio recordings have thus far been disclosed to Garcia.  <u>See</u> United States' Response to Defendant's Opposed Renewed Motion to Declare Case Complex at 3, filed October 13, 2016 (Doc. 119)("United States' Response").

On March 28, 2016, Garcia moved the Court to declare this case complex given the complicated nature of the multiple cases being brought against him.  <u>See</u> Defendant's Opposed Motion to Designate the Case Complex, filed March 28, 2016 (Doc. 56).  The United States opposed that Opposed Motion to Designate the Case Complex, because, while the cases involving the prosecution of multiple SNM members' involvement in racketeering activity might

- 4 -

require a complex designation, the present case is a stand-alone drug offense.  See MOO at 4.
The Court denied the Defendant's Opposed Motion to Designate the Case Complex, but without
prejudice to bringing a similar motion should it appear as though the case warranted the complex
designation in the future.  See MOO at 22.

Garcia now, again, moves the Court to declare the present case complex given the
complicated nature of the multiple cases brought against him.  See Renewed Motion to Declare
Complex at 1.  The United States, again, opposes the Motion to Declare Complex, because, "this
is a drug case," and "there is nothing about this case warranting a complex case designation."
United States' Response at 4.  The Court recently continued trial in this matter to November 30,
2016.  See Order Granting Unopposed Motion to Continue the October 24, 2016, Motions
Deadline and the October 31, 2016, Trial Setting, filed October 25, 2016 (Doc. 127).  The Court
will, again, deny Garcia's Motion to Declare Complex without prejudice to renew later in the
case.

1.  **The Renewed Motion to Declare Complex.**

Garcia's Renewed Motion to Declare Complex requests that the Court designate his case
complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii).  See Renewed Motion to Declare Complex at
1.  The Renewed Motion to Declare Complex primarily relies on the interrelation amongst this
case, the complex case United States v. Deleon, No. CR. 15-4268 JB, and the complex case
United States v. Baca, No. CR 16-1613, all of which have named Garcia a Defendant.  See
Renewed Motion to Declare Complex ¶¶ 4-5, at 2.  The Renewed Motion to Declare Complex
notes that learned counsel has been appointed for Garcia in all three of the cases.  See Renewed
Motion to Declare Complex ¶¶ 6-7, at 3.  Further, the United States had at one point, according

to the Renewed Motion to Declare Complex, agreed to declare this case complex.  See Renewed

Motion to Declare Complex ¶¶ 10-11, at 3-4.

Garcia argues that, thus far, the discovery disclosed is identical in each of Garcia's three

cases.  See Renewed Motion to Declare Case Complex ¶ 13, at 4.  Garcia also argues that he will

need to respond to the discovery for all three cases with his own independent analyses, and that

such will be complicated by them needing to proceed to trial in accordance with usual deadlines.

See Renewed Motion to Declare Complex ¶ 28, at 9.  To that point, the Renewed Motion to

Declare Case Complex explains that these three cases are further interrelated, because, "[a]ll of

the counts in this case are alleged as Overt Acts in the 16-1613 case."  Renewed Motion to

Declare Complex ¶ 14, at 4.  The Renewed Motion to Declare Complex also emphasizes the

difficulty Garcia has in receiving his discovery, in each case, via tablet.  See Renewed Motion to

Declare Complex ¶¶ 19-27, 30-31, at 6-9.  Garcia argues that this difficulty will increase the

case's complexity.  See Renewed Motion to Declare Complex ¶¶ 19-25, at 6-8.

Accordingly, the Renewed Motion to Declare Complex maintains:

> Counsel has been reviewing discovery with Mr. Garcia in a diligent  fashion.
> Counsel respectfully requests the Court to order this case complex due to the  facts
> stated above, the relatedness of all three of Mr. Garcia's cases (two which have
> already been declared complex[)], the volume and number of discovery
> documents, the  number of defendants in the related cases, novel questions of fact
> and law (CHS given a  cellular phone while incarcerated), the number of CHSs,
> and discovery still  outstanding.

Renewed Motion to Declare Complex ¶ 32, at 8.

### 2.  The United States' Response.

The United States responded to the Renewed Motion to Declare Complex on October 13,

2016.  See United States' Response at 1.  The United States' Response provides that "this case

involves undercover controlled drug purchases that were recorded and photographed.  There

- 6 -

were also search warrants that were executed on the Defendant' residence and the Defendant's stash house." United States' Response at 4. Accordingly, the United States argues that, although "the Defendant is facing more serious charges in another case . . . there is nothing complex about the facts of this case warranting a complex designation." United States' Response at 4. In addition, "the United States does not intend to introduce evidence of the Syndicato Nuevo Mexico (SNM) at trial, unless it becomes relevant based on the defense. Therefore, Defendant's claim that she has to review over 40,000 pages of discovery is simply inaccurate." United States' Response at 4. The United States concludes that it "is prepared to go to trial." United States' Response at 5.

**3.   The October 25, 2016, Hearing.**

The Court held a hearing on October 25, 2016. See Transcript of Hearing, taken October 25, 2016 ("Tr.").[2]   At the outset of the hearing, the Court delivered to the parties the MOO denying Garcia's first motion to declare the case complex. See Tr. at 2:22-24 (Court). The parties largely stuck to their briefing's arguments, with Garcia beginning by arguing that "the defense submits again that this case is so unusual, due to the nature of prosecution, that it is unreasonable to expect the defense to prepare for this trial or pretrial proceedings within the time allotted under 3161." Tr. at 3:20-24 (Sirignano). Garcia maintained that, although it is "the Government's position that the evidence that was disclosed in the companion cases [is] not relevant to this case . . . that's completely incorrect. The evidence that has been discovered by the Government relates to all three cases." Tr. at 4:19-25 (Sirignano). Garcia then explained that there was certain evidence left to be discovered -- such as the identity of confidential informants -- making it untenable to go to trial on the usual deadlines. See Tr. at 6:1-9:1

---

[2]The Court's citations to the transcript of the hearing refer to the court reporters original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

(Sirignano).  The Court then posited that, "I'll bet they're going to get up here in a minute, and they're going to tell you that for this case you have everything they're going to introduce; that you have all the Brady information; and they'll give you the Giglio at a certain -- two weeks before trial."  Tr. at 9:2-8 (Court).  Garcia, in response, argued that he still did not have information on the confidential informants, how a cellular telephone got into the Department of Corrections, and how the case began.  See Tr. at 9:13-19 (Sirignano).  The Court was not certain, however, that Garcia would ultimately be able to get that information in the course of discovery. See Tr. at 9:20-23 (Court).

The United States then took up argument, and the Court indicated that "I get the feeling you're squeezing the Defendant with these motions to continue for whatever purposes the Government has with Mr. Garcia, but you're not ready for trial either."  Tr. at 15:7-20 (Court). The United States responded that, "in order to try this case," Garcia "needs 1,400 pages of discovery.  That's the Chris Garcia matter."  Tr. at 15:22-24 (Castellano).  The United States then provided that, "two weeks before trial, she'll have the information.  I will say that she has the recording of at least one of those informants.  We've turned over the recordings.  So they know who at least one of those people is.  And for purposes of this case, we're probably talking about two informants, not 93 informants."  Tr. at 16:15-22 (Castellano).  The Court, in response to the United States' uncertainty with respect to the number of informants, then pressed the United States about the precise number of informants.  See Tr. at 17:14-22 (Court).  The United States confirmed that it would only be two informants, and that their identities -- and approximately 1,400 pages of discovery -- would be disclosed by two weeks before trial.  See Tr. at 17:23-24 (Castellano).  The Court then addressed the issue of the tablets and inquired of the United States whether, "on these 1400 pages, do you care whether he has hard copies in prison?"

Tr. at 22:5-8 (Court).  The United States replied that only a small, undefined subset might need to be kept on the tablet for safety purposes, but that the discovery coordinator could probably rush the delivery of Garcia's tablet, as he had recently done for a defendant in another related case.  See Tr. at 22:13-25:3 (Castellano, Court).  Ultimately, the United States concluded that evidence related to SNM would not be relevant to the prosecution's case and that they were ready to try the case at that time.  See Tr. at 25:3-32:8 (Castellano, Court).

Garcia then again argued, indicating that it was imperative that the attorneys be fully prepared to try this case before the trial begins.  See Tr. at 33:4-7 (Adams).  Garcia reiterated that, given the interrelation amongst the three cases, it would be untenable to bring the drug case to trial before the discovery was complete in the other cases, because, without waiting, Garcia is unable to understand the full extent of the "Government's spear," and the tip of that spear was all of which he is aware of at the moment.  Tr. at 34:16-21 (Adams).  Garcia then suggested that the Court allow Russell Aoki, the discovery coordinator, to call into the hearing so he could explain to the Court some of the nuances of the discovery process as it pertains to the tablets.  See Tr. at 42:12-13 (Court).

Aoki explained to the Court that:

typically, we get the discovery.  We take a look at it.  And my staff takes a pretty close look at it.  What we're looking for are errors in the copying process. . . . [W]e go through and we check to see if the documents are OCRs, so they're searchable.  Then, the more complicated part ends up being the audio and video files, because often they require a proprietary player.  And so we convert them into common file types, like MP 3 and MP 4. . . .  Some of the discovery in this case could not be converted.  So what we had to do is use screen capture software, which basically, we're running the video, this is for video, and the computer is capturing it by the screen and re-recording it.

Tr. at 45:8-46:10 (Aoki).  Aoki further provided that his office receives discovery by mail, and that all of the discovery the United States would mail came with a cover letter explaining the

items included in the package.   See Tr. at 46:10-47:11 (Aoki).   With respect to Garcia's standalone case, Aoki said that they use a technology company to itemize the data, and that there are a "little over 3,000" items of discovery.   Tr. at 47:17-25 (Aoki).   That number, though, is not "pages; it's not page equivalents.   These are items.   So an item could be, for example, a text message; that's one item.   It could be a phone call; that's one item.   So if you have 400 text messages, that's 400 items.   If you have 100 missed calls, that's 100 items."   Tr. at 47:25-48:6 (Aoki).   Aoki then recounted the issues he encounters with password protection, delivery to the prisons, and open access nature of the tablets with respect to various applications.   See Tr. at 48:6-53:14 (Aoki).   Aoki explained that four or five people at the New Mexico Department of Corrections handled the intake, and that "they're very busy," which leads to some delays.   See Tr. at 54:18-25 (Aoki).

The United States then took up examination of Aoki, discussing just how many materials had been produced specifically for Garcia's standalone drug case.   See Tr. at 57:22-62:23 (Aoki). Essentially, Aoki clarified that much of the confusion as to how much discovery had been, or still needed to be, disclosed could be attributed to the numbering of items and material not readily reduced into pages.   See Tr. at 62:23-63:8 (Aoki).   Aoki then spoke more about the itemized cover letters the United States sends with its discovery materials, explaining that the defense "receive[s] the discovery with the cover letter identifying which case it goes to.   We host it on a discovery management platform.   They could search through it and group things by defendant.   It will return still a large number of materials."   Tr. at 64:19-23 (Aoki).

After the discussion with Mr. Aoki, the Court provided that, "on the more narrow issue of whether to declare the case complex, I'm not prepared to do that this afternoon.   Having recently issued the opinion, I think I've taken a hard look at this case.   Nothing today suggests to me that

we're still dealing with a complex case." Tr. at 74:16-24 (Court). Accordingly, the Court told the parties that it was inclined to deny the Renewed Motion to Declare Complex without prejudice to Garcia raising it again down the road. See Tr. at 75:11-13 (Court).

## LAW REGARDING THE SPEEDY TRIAL ACT, 18 U.S.C. § 3161

"The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." United States v. Saltzman, 984 F.2d 1087, 1090 (10th Cir. 1993)(quoting United States v. Noone, 913 F.2d 20, 28 (1st Cir. 1990)). The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), reads in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).

The Speedy Trial Act requires "that an accused person's trial must begin within seventy days of his indictment or initial appearance, whichever is later." United States v. Cano-Silva, 402 F.3d 1031, 1034 (10th Cir. 2006)(citing 18 U.S.C. § 3161(c)(1)). The Speedy Trial Act provides that certain periods of delay are not included in computing the time limits for trial. 18 U.S.C. § 3161 states in relevant part:

> **(h)** The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> **(1)** Any period of delay resulting from other proceedings concerning the defendant, including but not limited to --

> **(A)** delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
>
> . . . .
>
> **(F)** delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> . . . .
>
> **(J)** delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
>
> . . . .
>
> **(4)** Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

. . . .

**(7)**

> **(A)** Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the

- 12 -

> granting of such continuance outweigh the
> best interests of the public and the defendant
> in a speedy trial.

18 U.S.C. § 3161.  Courts are instructed to consider specific factors when determining whether

to grant a continuance, and thereby suspend the Speedy Trial Act's deadlines, under section (A)

of 18 U.S.C. § 3161(h)(7).  See 18 U.S.C. § 3161(h)(7)(B).  Section 3161(h)(7)(B) sets forth the

factors a court should consider:

> **(B)** The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:
>
> **(i)** Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> **(ii)** Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> **(iii)** Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.
>
> **(iv)** Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

The Supreme Court of the United States of America, in United States v. Zedner, 547 U.S. 489 (2006), held that, when a district court makes no findings on the record to support a § 3161(h)(8) continuance -- now § 3161(h)(7) -- harmless-error review is not appropriate.  See 547 U.S. at 506-07.  In United States v. Williams, 511 F.3d 1044 (10th Cir. 2007), the United States Court of Appeals for the Tenth Circuit held that "the Act does not allow a district court to retroactively grant an ends-of-justice continuance.  'Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period.'"  511 F.3d at 1055 (quoting United States v. Doran, 882 F.2d 1511, 1516 (10th Cir. 1989)).  In granting an ends-of-justice continuance, a district court must make explicit finds showing why the continuance is necessary.  See United States v. Hernandez-Mejia, 406 Fed. App'x 330, 336 (10th Cir. 2011)(unpublished).[3] The Tenth Circuit has explained:

---

[3]United States v. Hernandez-Mejia is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court concludes that United States v. Hernandez-Mejia, has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

> This court has interpreted strictly the requirements of § 3161(h)(7)(A) and (B).
> We have held (1) that to satisfy the requirements of § 3161(h)(7)(A), the district
> court must make explicit oral or written on-the-record findings explaining the
> reasons why a trial continuance is necessary, unless the facts supporting the
> continuance "are obvious and set forth in the motion for the continuance itself,"
> United States v. Occhipinti, 998 F.2d 791, 797 (10th Cir. 1993)(internal quotation
> marks omitted); (2) that "the record must clearly establish [that] the district court
> considered the proper factors at the time such a continuance was granted,"
> [United States v.] Toombs, 574 F.3d [1262,] 1269 [(10th Cir. 2009)]; (3) that "it
> must be clear from the record that the trial court struck the proper balance when it
> granted the continuance," United States v. Williams, 511 F.3d 1044, 1056 (10th
> Cir. 2007)(alteration and internal quotation marks omitted); and (4) that although
> adequate trial-preparation time is a permissible reason for granting a continuance
> and tolling the Act, "such a reason must be supported by the information and
> evidence presented to the district court," United States v. Gonzales, 137 F.3d
> 1431, 1435 (10th Cir. 1998).

United States v. Hernandez-Mejia, 406 F. App'x at 336.  See United States v. Fuentes, 2011 WL

2533079, at *5 (D.N.M. 2011)(Browning, J.).

Section 3162(a)(1) and (2) of the Act sets out the sanctions applicable when the United

States has not filed an indictment or information, or when the defendant is not brought to trial

within the time limits that § 3161(b) and (c) require:

**(a)**

      **(1)**      If, in the case of any individual against whom a complaint
is filed charging such individual with an offense, no
indictment or information is filed within the time limit
required by section 3161(b) as extended by section 3161(h)
of this chapter, such charge against that individual
contained in such complaint shall be dismissed or otherwise
dropped.  In determining whether to dismiss the case with
or without prejudice, the court shall consider, among
others, each of the following factors: the seriousness of the
offense; the facts and circumstances of the case which led
to the dismissal; and the impact of a reprosecution on the
administration of this chapter and on the administration of
justice.

      **(2)**      If a defendant is not brought to trial within the time limit
required by section 3161(c) as extended by section 3161(h),
the information or indictment shall be dismissed on motion

> of the defendant.  The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3).  In determining whether to dismiss the case with  or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the  administration of this chapter and on the administration of justice.  Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

18 U.S.C. § 3162(a)(1), (2).

In United States v. Cano-Silva, the Tenth Circuit stated: "The fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which should be reserved for more egregious violations.  Dismissal with prejudice is a strong message indeed, and one ill-suited to an isolated and inadvertent violation." 402 F.3d at 1035.

> While dismissal of the indictment is mandatory, the district court retains discretion to determine whether the indictment is dismissed with or without prejudice.  In determining whether to dismiss with or without prejudice, the court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

United States v. Cano-Silva, 402 F.3d at 1034 (quoting 18 U.S.C. § 3162(a)(2))(citations omitted).  The offense's seriousness must be weighed against the delay's severity.  See United States v. Jones, 213 F.3d 1253, 1257 (10th Cir. 2000).  In addition, the Supreme Court has suggested that the trial court should also consider, when determining whether to dismiss an indictment with prejudice, the prejudice to the defendant that a Speedy Trial violation delay has caused.  See United States v. Taylor, 487 U.S. 326, 333-34 (1988).

- 16 -

"It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." United States v. Taylor, 487 U.S. at 342.  "Preindictment delay that rises to a constitutional violation requires dismissal of the indictment with prejudice to retrial." United States v. Johnson, 120 F.3d 1107, 1110 n.2 (10th Cir. 1997)(citing United States v. Marion, 404 U.S. 307, 324 (1971)).  "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy."  United States v. Saltzman, 984 F.2d at 1093.  See United States v. Johnson, 120 F.3d at 1112 ("Ms. Johnson bears no responsibility for the circumstances leading to the Speedy Trial Act violation, and . . . she properly asserted her rights under the Act.").  In United States v. Johnson, one aspect of the Speedy Trial Act violations that troubled the Tenth Circuit was that, although the nature of the offense was relatively uncomplicated, the government delayed almost two years in indicting her.  See 120 F.3d at 1112.

In United States v. Perez-Alcatan, 376 F. Supp. 2d 1253 (D.N.M. 2005)(Browning, J.), the Court dismissed Perez-Alcatan's indictment without prejudice, because the United States, through inadvertent error, failed to indict him within thirty days of the arrest, as the Speedy Trial Act requires.  See 376 F. Supp. 2d at 1257.  Thirty days from Perez-Alcatan's arrest was May 26, 2005, and a grand jury indicted Perez-Alcatan on June 14, 2005.  See 376 F. Supp. 2d at 1254. Perez-Alcatan argued that the Court should dismiss his case with prejudice.  See 376 F. Supp. 2d at 1256.  He contended that his charged crime, re-entry into the United States after conviction for an aggravated felony, which carried a 16-level enhancement under the United States Sentencing Guidelines, was not a serious crime.  See 376 F. Supp. 2d at 1257.  His underlying aggravated felony, however, was voluntary manslaughter.  See 376 F. Supp. 2d at 1254.  The Court looked

to the Sentencing Guidelines, stating that a 16-level enhancement is among the largest in the Sentencing Guidelines, which signals Congress' intent to consider the crime a serious one.  See 376 F. Supp. 2d at 1256.  Furthermore, the Court stated that the Guidelines lack of authorization for probation in such circumstances, and that Congress is hiring more border agents and Assistant United States Attorneys to slow the flow of immigration, and punish those who are already felons, indicates the crime's seriousness.  See 376 F. Supp. 2d at 1256.  The Court concluded that the seriousness of the offense favored dismissal without prejudice.  See 376 F. Supp. 2d at 1256.  The Court also held that the facts and circumstances that led to the delay did not favor dismissal with prejudice.  See 376 F. Supp. 2d at 1256-57.

While most immigration cases in which a defendant waives a preliminary hearing and detention hearing also involve a waiver of presentment to the grand jury, Perez-Alcatan chose to waive the detention hearing and the preliminary hearing, but not presentment to the grand jury.  See 376 F. Supp. 2d at 1256.  As a result of the unique situation, the file cover in the United States Attorney's Office was annotated "waiver" and was incorrectly filed, causing untimely presentment.  376 F. Supp. 2d at 1257.  The Court further held that, because the delay-producing conduct was an administrative oversight and was without bad faith, dismissing the case with prejudice would do little to prevent such future mistakes.  See 376 F. Supp. 2d at 1257.  The Court stated that the "United States continues to present its cases for indictment in a timely manner; dismissal with prejudice would not improve the professional efforts already in place in adhering to the Speedy Trial Act."  376 F. Supp. 2d at 1257.  The Court also stated that Perez-Alcatan had not alleged any actual prejudice in his ability to defend himself.  See 376 F. Supp. 2d at 1257.  The Court, therefore, dismissed the case without prejudice.  See 376 F. Supp. 2d at 1257.

## ANALYSIS

At the present time, the Court is not persuaded that Garcia's case meets the requirements of a complex designation.  Although Garcia has been indicted in other cases, for related conduct, those cases are distinguishable in their complexity.  Garcia, in this case, is the sole Defendant, and he has been charged only with routine drug crimes.

Garcia's case, as of the time of the hearing, does not meet 18 U.S.C. § 3161(h)(7)(B)(ii)'s requirements for a complex designation.  The Court will deny Garcia's Renewed Motion to Declare Complex, because it concludes that -- at the present time -- the nature of the prosecution does not rise to a level that warrants designating the case complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) and consequent suspension of the usual deadlines under the Speedy Trial Act.

> The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are . . . (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section . . . .

18 U.S.C. § 3161(h)(7)(B)(ii).  Garcia's primary argument in support of his Motion to Declare Complex is that the Court has already, in related cases -- which involves the exact same discovery materials as this case -- declared those cases complex.  See Renewed Motion to Declare Case Complex ¶ 32, at 8.  The Court is not convinced, however, that the circumstances of that litigation -- which involves multiple defendants and alleged violent racketeering activity that spans many years -- are involved in this prosecution of Garcia.  As the United States argued in the United States' Response, the prosecution in this case is of drug crimes, and the United States does not intend to introduce evidence related to SNM.  See United States' Response at 3-4.  That the very same drug trafficking plays a role in the United States' prosecution of Garcia

- 19 -

and his co-Defendants in a related case premised upon racketeering activity is of no moment with respect to the complexity of the prosecution of the drug crimes in this case.  The United States has assured the Court that there will only be two confidential informants, and that their identities, and all other discovery, will have been produced by two weeks before trial -- a trial they are ready to begin.  See Tr. at 17:23-24 (Castellano).

In the end, this case against Garcia is just another drug case which fills the Court's docket.  It is not unusual or complex.  There is only one Defendant, where in the Court's other drug cases, there are multiple Defendants.  The United States may be trying to squeeze Garcia to plea so that it can use him in other cases, but the nature of the prosecution is straightforward.  This is not a VICAR or racketeering case.  There does not appear to exist any unusual questions of fact or law.  It is not unreasonable to expect adequate preparation for potential prosecution under usual deadlines.  While the Court can appreciate that Garcia's attorneys want to know everything about the other cases before they litigate this case, this standalone case can be fully prosecuted in accordance with the time limits that the Speedy Trial Act establishes.  Accordingly, the Court concludes that, for the time being, it is not "unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits" which the Speedy Trial Act provides.  Section 3161(h)(7)(B)(ii).  The Court will, however, leave open the potential for Garcia to bring another motion to declare the case complex, pursuant to § 3161(h)(7)(B)(ii), should the normal deadlines soon become untenable.

**IT IS ORDERED** that the Defendant's Opposed Renewed Motion to Declare Case Complex, filed September 29, 2016 (Doc. 114), is denied without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Maria Y. Armijo
Randy M. Castellano
Matthew M. Beck
  Assistant United States Attorneys
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Christopher W. Adams
Law Offices of Christopher W. Adams, P.C.
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

      *Attorneys for the Defendant Christopher Garcia*

Russell M. Aoki
Aoki Law, PLLC
Seattle, Washington

      *Court-Appointed Coordinating Discovery Attorney*