**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


UNITED STATES OF AMERICA,

      Plaintiff,

v.                              15-CR-4275 JB
                                    15-CR-4268 JB
                                    16-CR-1613 JB


CHRISTOPHER GARCIA,
ANGEL DELEON, et al.,
ANTHONY RAY BACA, et al.,

      Defendants.


## MOTION TO COMPEL DISCLOSURE OF DISCOVERABLE MATERIALS


      Defendant Christopher Garcia, by and through his counsel of record, Amy Sirignano and Christopher Adams, hereby submit this motion, requesting the Court to compel the Government to disclose the materials and documents in its possession, custody, and control, as summarized below.  On November 20, 2016, defense counsel sent written notice to the Government requesting copies of the documents and materials that are listed below.  *See* Exhibit F.  Since sending that request, the Government has not provided all the documents at issue, nor has the Government indicated to counsel whether they intend to produce most these documents. Consequently, defense counsel files this Motion, requesting that this Court enter an order compelling the Government to disclose the following items to defense counsel, or to permit access to reports or items in the Government's possession, custody and control, as originally requested in our November 20, 2016 letter. *Id*.

      The Defendant is entitled to items in the Government's possession as follows:

> Upon a defendant's request, the Government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the Government's possession, custody, or control and: (i) the item is material to preparing the defense; [or] (ii) the Government intends to use the item in its case-in-chief at trial.

FED. R. CRIM. P. 16(a)(1)(E).

Evidence is considered material, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Robinson*, 583 F.3d 1265, 1270 (10th Cir. 2009) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)); *see also United States v. Burton*, 81 F. Supp. 3d 1229, 1244 (D.N.M. 2015) (stating evidence is material under Rule 16 if there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, . . . or assisting impeachment or rebuttal.") (quoting *United States v. Graham*, 83 F.3d 1466, 1474, 317 U.S. App. D.C. 418 (D.C. Cir. 1996)) (quoting *United States v. Lloyd*, 992 F.2d 348, 351, 301 U.S. App. D.C. 186 (D.C. Cir. 1993)). A defendant is not required to show that withheld records would have resulted in his acquittal. *See Robinson*, 583 F.3d at 1270 (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)), *see also, United States v. Scott*, 7 F.3d 1046 (10th Cir. 1993) ("a defendant must demonstrate 'some indication that the pretrial disclosure of the disputed evidence [will enable] the defendant significantly to alter the quantum of proof in his favor.'") (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975), *cert. denied*, 423 U.S. 836 (1975)).

In accordance with Federal Rule of Criminal Procedure 16(a)(1)(E), the Defendant submits to the Court that the items listed below are all material to the Defendant's case, and these requests are predicated on a good-faith belief that these items will assist the Defendant in

preparing the defense to these charges, and as such these materials will allow the Defendant to "alter the quantum of proof in his favor." Consequently, the Defendant requests the following documents and other items from the Government:

## I. ITEMS RELATING TO SPECIFIC INCIDENT DATES

### a. Items relating to the May 6, 2014/2015[1] Incident

1. Any and all reports from Det. Kevin C. Hallstrom regarding the May 6, 2014/2015 alleged incident;

2. Photographs and sketch from search warrant executed on May 6, 2014/2015 at 8400 Bosque Point;

3. BCSO Evidence lab request(s), reports, evidence log(s), from May 6, 2014/2015;

4. Chains of Custody of evidence from May 6, 2014/2015, BCSO, FBI, and all law enforcement;

5. NM State Laboratory results from analysis of drugs from execution of search warrant on May 6, 2014/2015 at 8400 Bosque Point SW;

6. All reports on Confidential Human Source, ("CHS") Glenda Trujillo, and other CHSs from the alleged May 6, 2014/2015 drug deal, traffic stop, her statements to law enforcement, all records of payments made by, and benefits from law enforcement, drug use and trafficking history, background with law enforcement, payments from law enforcement, criminal history, among other law enforcement reports regarding his/her status as a CHS;

7. Any and all law enforcement reports relating to this incident, not previously disclosed.

---

[1] The reports already disclosed to counsel are unclear whether this incident date took place in 2014 or 2015.

**b. Items relating to the July 13, 2015 Incident**:

1. Complete law enforcement reports regarding the allegations, including, but not limited to, BCSO case number, 15-0689616, or any separate BCSO case number involving the alleged drug buy on July 13, 2015;

2. Complete law enforcement reports regarding BCSO case numbers, 15-0699156, or any separate BCSO case number involving the alleged buy on July 13, 2015;

3. Full laboratory request(s), reports, evidence log(s), *see* Garcia Bates 19-29 (date only on page 26, no report related case number); Lab report number 15-0687932, requested by Lt. P. Golden (lab report dated October 16, 2015); *see* Garcia Bates 37-40 (date 7/13/15, page 37), BCSO 15-689616, requested by Lt. P. Golden; *see* Garcia Bates 45-48 (date 7/13/15 page 45), BCSO 15-699156, requested by Lt. P. Golden;

4. All reports on any and all CHSs from the alleged July 13, 2015 alleged drug deal and traffic stop, including, but not limited to the CHSs (possibly, Glenda Trujillo), all CHS statements to law enforcement, all records of payments made by, and benefits from law enforcement, drug use and trafficking history, background with law enforcement, payments from law enforcement, criminal history, among other law enforcement reports regarding his/her status as a CHS;

5. Chains of Custody of evidence from July 13, 2015, BCSO, FBI, and all law enforcement;

6. Any and all law enforcement reports relating to this incident, not previously disclosed.


**c.   Items relating to the August 7, 2015 Incident (Counts 1 and Counts 2; Overt Act 191 in 16-CR-1613)**:

1. Complete law enforcement reports regarding the allegations in the indictment, including, but not limited to, reports by Deputy Matt Chance;

2. Full laboratory request(s) from BSCO and all law enforcement, reports, evidence log(s), from August 7, 2015; Chains of Custody BCSO/FBI and all law enforcement;

3. Complete FBI Investigative Reports (not just a surveillance report, *see* Bates #6);

4. All law enforcement reports on any and all CHSs from the alleged August 7, 2015 incident, including, but not limited to, CHS Sammy Griego and his wife, Angelina Hito, Gerald Archuleta, a.k.a., "Stix," statements to law enforcement, all records of payments made by, and benefits from law enforcement, drug use and trafficking history, background with law enforcement, payments from law enforcement, criminal history, among other law enforcement reports regarding his/her status as a CHS, among others;

5. Final transcripts from all recordings from August 7, 2015 which the Government intends to use as evidence at trial;

6. Any and all law enforcement reports relating to this incident, not previously disclosed.

**d. Items Relating to the August 11, 2015 Incident (Count 3; Overt Act 192, Overt Act 193 in 16-CR-1613)**:

1. Complete law enforcement reports regarding the allegations of August 11, 2015, including, but not limited to, BCSO reports written by Deputy Eric Kuebler, among others;

2. All FBI investigative reports, (*see* Bates Garcia 9, 10 – only FBI Surveillance Report);

3. BCSO and all law enforcement evidence laboratory requests from all law enforcement, reports, evidence log(s), from August 11, 2015; Chains of Custody BCSO/FBI and all law enforcement;

4. All law enforcement reports on any and all CHSs from the alleged August 11, 2015 incident, including, but not limited to, CHS Sammy Griego and his wife,

Angelina Hito, Gerald Archuleta, a.k.a., "Stix," and Vincent Garduno, a.k.a., "Fatal;" statements to law enforcement, all records of payments made by, and benefits from law enforcement, drug use and trafficking history, background with law enforcement, payments from law enforcement, criminal history, among other law enforcement reports regarding his/her status as a CHS, among others;

5. Final transcripts from all recordings involving Sammy Griego and his wife, Angelina Hito, Gerald Archuleta, a.k.a., "Stix," and Vincent Garduno, a.k.a., "Fatal;" which the Government intends to use as evidence at trial;

6. Copy or original of client's home surveillance equipment and video from 8400 Bosque Point SW;

7. Return of original of client's cellular telephones, tablets, and computer(s), and including any and all photographs/video on client's cellular telephones, tablets, and computer(s), including, all forensic reports relating to all client's cellular telephones, tablets, and computers, but not limited to any and all reports from the FBI CART or the NM Regional Forensic Science Center regarding any and all cellular, computer or technology evidence that is part of these cases (the Government can mirror image these devices).

8. Any and all law enforcement reports relating to the August 11, 2015 incident, not previously disclosed.

**e. Items Relating to the September 10, 2015 Incident (Count 4, Overt Act 197 in 16-CR-1613; Overt Act 229 and 230 in 15-CR-4268):**

1. Any and all law enforcement reports regarding the allegations in the indictment of September 10, 2015, including, but not limited to, all BCSO reports, 15-18720;

2. All FBI Investigative reports (*see* Garcia Bates 11, 15 only – FBI Surveillance Report);

3. All *Giglio* information on Undercover Agent "Cesar" a.k.a. Officer Sergio Munoz;

4. BCSO and all law enforcement evidence laboratory requests, reports, evidence log(s),from September 10, 2015; Chains of Custody BCSO/FBI and all law enforcement;

5. All law enforcement reports on any and all CHSs from the alleged September 10, 2015 incident, including, but not limited to, CHS Sammy Griego and his wife, Angelina Hito, CHS Eric Duran, "Crazil," "Ironman;" statements to law enforcement, all records of payments made by, and benefits from law enforcement, including, but not limited to all payments to Eric Duran's NMDOC commissary account during the period of this investigation (2014-2016), drug use and trafficking history, background with law enforcement, payments from law enforcement, criminal history, among other law enforcement reports regarding his/her status as a CHS, among others;

6. Any and all law enforcement reports, court orders, letters, orders, permission from NMDOC Secretary Gregg Marcantel regarding the cellular telephone Eric Duran, a.k.a. "Crazil," a.k.a. "Ironman," regarding law enforcement giving him a cellular telephone while serving his term of imprisonment at the NM DOC, including cellular telephone number, 505-218-1861, or any other cellular telephone number that Eric Duran "Crazil" used as an agent for law enforcement while incarcerated in the NMDOC;

7. Final transcripts from all recordings from Eric Duran, a.k.a. "Crazil," a.k.a. "Ironman," which the Government intends to use as evidence at trial;

8. Any and all information on the alleged firearm, including, but not limited to, its history, functioning, results of any and all fingerprint and DNA evidence, which CHS brought to 8400 Bosque Point SW, and how it was returned to FBI custody;

9. Any and all law enforcement reports relating to this incident, not previously disclosed.

**f. Items Relating to the November 18, 2015 Uncharged Incident**:

1.  Complete law enforcement reports regarding the allegations from November 18, 2015, including, but not limited to, all BSCO Reports, case number 15-18720;

2.  BCSO and all law enforcement evidence laboratory requests, reports, evidence log(s), from November 18, 2015; Chains of Custody BCSO/FBI and all law enforcement;

3.  All law enforcement reports on any and all CHSs from the alleged November 18, 2015 incident, including, but not limited to, CHS Sammy Griego and his wife, Angelina Hito, CHS Eric Duran, "Crazil," "Ironman;" statements to law enforcement, all records of payments made by, and benefits from law enforcement, including, but not limited to all payments to Eric Duran's NMDOC commissary account during the period of this investigation (2014-2016), drug use and trafficking history, background with law enforcement, payments from law enforcement, criminal history, among other law enforcement reports regarding his/her status as a CHS, among others.

**g. Items Relating to the December 3, 2015 Incident**:

1.  Complete law enforcement reports regarding the allegations in the indictment, including, but not limited to, all sealed and unsealed search warrants, affidavits, and returns involving Mr. Christopher Garcia, including his residence, 8400 Bosque Point SW, Albuquerque, NM, all his vehicles, his parents' residence (redacted) ____Kelly Road SW, Albuquerque, NM, his brother Matthew Garcia's residence (redacted) _____, and his uncle Raymond Garcia's residence, (redacted)_____Aragon Road SW, Albuquerque, NM and vehicle, (redacted) _____Kelly Road SW, Albuquerque, NM including, but not limited to 15-MR-802, 15-MR-803, BCSO sealed search warrant case number (redacted) _____;

2. Any and all law enforcement reports relating to the December 3, 2015 execution of search warrants related to Christopher Garcia, his residenc(es) and his vehicles, not previously disclosed.

3. Any and all complete (not redacted) audio recordings, transcripts, and *written Miranda* waiver executed by Christopher Garcia during his 3+ hour post-arrest statement with law enforcement.

4. Records of all law enforcement present during the post-arrest interrogation of Christopher Garcia on December 3, 2015.

## h. Other Items Requested[2]

1. All incident reports, search warrants, affidavits, records, reports, video/audio recordings, witness statements, photographs, evidence inventories and chain of custody reports, laboratory or forensic reports, or any other investigative materials, documents, or data relating to the following incidents:

   - May 4, 1995 alleged Incident (2:16-CR-01613, Overt Act #16)
   - March 7, 1997 alleged Incident (2:16-CR-01613, Overt Act #26)
   - September 12, 1997 alleged Incident (2:16-CR-01613, Overt Act #31)
   - 1999 alleged Incident (2:16-CR-01613, Overt Act #45)
   - February 19, 2004 alleged Incident (2:16-CR-01613, Overt Act #78)
   - 2004-2005 alleged Incident (2:16-CR-01613, Overt Act #83)
   - February 2004 alleged shooting of Christopher Garcia (2:16-CR-01613, Overt Acts #84-87).
     - In connection with this incident, Counsel specifically requests the following records: (1) search warrant of 1737 Bonaguidi SW; (2) any

---

[2] These items were not explicitly requested in our November 20, 2016 letter. Nevertheless, the Defendant is entitled to these items and respectfully requests that the Court compel the Government to produce them in a timely manner.

and all photographs, video, crime scene sketches; (3) CADs reports; (4) any and all evidence checked into BCSO evidence in relation to the incident; (5) Any and all audio of follow-up investigation or of the initial event; (6) Any and all information regarding the shooter.

- February 2005 alleged Incident(s) (2:16-CR-01613, Overt Acts #84-87).

    o In connection with this incident, Counsel specifically requests the following records: (1) phone records for Christopher Garcia, Michael Snow, and the alleged victim SD on or around the time of the alleged homicide; (2) Medical records for the alleged victim SD, including coroner's reports, autopsy records, or any other documents relating to the alleged victim SD; (3) Investigative reports from BCSO related to this investigation; (4) Witness statement(s) from Amanda Chavez, or any other individuals interviewed by law enforcement during the course of this investigation; (5) Crime scene photographs; and (6) Counsel requests that the Government allow access to the vehicle where the alleged SD homicide took place, so Counsel has the opportunity to have the crime scene examined by a defense expert.

- February 4, 2005 alleged Incident (2:16-CR-01613, Overt Act #88)

- 2005 alleged Incident(s) (2:16-CR-01613, Overt Act #89, 90, 91)

- May 10, 2006 alleged Incident (2:16-CR-01613, Overt Act #100)

- June 14, 2006 alleged Incident (2:16-CR-01613, Overt Act #101)

- December 11, 2008 alleged Incident (2:16-CR-01613, Overt Act #125)

- 2012 alleged Incident (2:16-CR-01613, Overt Act #158)

- September 2014 alleged Incident (2:16-CR-01613, Overt Act #178)

- 2015 alleged Incident (2:16-CR-01613, Overt Act #182)

- May 2015 alleged Incident (2:16-CR-01613, Overt Act #188)

- May 6, 2015 Incident (2:16-CR-01613, Overt Act #189)

- May/June 2015 alleged Incident (2:16-CR-01613, Overt Act #190)

- September 4, 2015 alleged Incident (2:16-CR-01613, Overt Act #194)

- September 5, 2015 alleged Incident (2:16-CR-01613, Overt Act #195)

- September 9, 2015 alleged Incident (2:16-CR-01613, Overt Act #196)

- September 19, 2015 Incident (2:16-CR-01613, Overt Act #198)

- November 11, 2015 alleged Incident (2:16-CR-01613, Overt Act #227)

- November 15, 2015 alleged Incident (2:16-CR-01613, Overt Act #228)

- November 26, 2015 alleged Incident (2:16-CR-01613, Overt Act #232)

- November 29, 2015 alleged Incident(s) (2:16-CR-01613, Overt Act #233, 234, 235)

- November 30, 2015 alleged Incident (2:16-CR-01613, Overt Act #236)

- December 3, 2015 alleged Incident(s) (2:16-CR-01613, Overt Act #238, 239, 240, 241, 242)

- Alleged threat against "Sandman" by Mr. Christopher Garcia (information provided by AUSA Maria Armijo via email to counsel on January 17, 2017.

- All client recorded telephone calls since incarcerated from the Otero County Detention Center, Torrance County Detention Center, and the Santa Fe County Adult Detention Center.


## II. SCIENTIFIC REPORTS AND RELATED ITEMS

1. All CVs, expert qualifications, and notice of expert testimony and relevance of all expert witnesses the Government intends on calling at trial, including, but not limited to, Manuel Gomez, Albuquerque Police Department Crime Laboratory; Cheryl M. Serena, Forensic Scientist, Southern Forensic Laboratory, Peter Erik Peterson, Ph.D., Supervisory Physical Scientist/Forensic Examiner, FBI Laboratory, Latent Print Operations Unit; Scott Wischnewski, Senior Drug Chemist, Department of Justice, Drug Enforcement Administration, South Central Laboratory, Dallas, TX; Sherine Ali, Federal Bureau of Investigation Latent Print Operations Unit;  Bryan Acee, Special Agent, Federal Bureau

of Investigation, the unnamed law enforcement audio expert who enhanced any and all audio recordings disclosed in discovery, and others not yet disclosed to the defense.

2. The validation study for each qualitative and quantitative method used to analyze the drug evidence in this case. The complete validation file, including scope and approach of the empirical design, assumptions, raw and processed data, results, statistical analysis of data, conclusions, and computed estimate of uncertainty. If the laboratory relied on external method validation, all relevant references, and a copy of the laboratory's internal verification records documenting the empirically determined performance characteristics for the method.

3. The validation and verification records of any laboratory prepared or laboratory revised software or any data processing applications (e.g., Excel templates) used to process forensic analytical data.

4. For each method used to test evidence in the subject case, the laboratory's approved Standard Operating Procedure(s) (however named; the version that was in effect at the time of the subject casework). If any aspect of the testing method was addressed in separate procedures (e.g., sample preparation, instrument calibration, quality control), copies of those procedures.

5. SOPs refers to Standard Operating Procedures that were in effect in during the analysis of the evidence in this case, including, as appropriate, procedures regarding preparation, screening, analysis, and quantitation.

6. *See* Exhibit A – Materials from the Agencies Responsible for Sample Collection and Transportation;

7. *See* Exhibit B – NM DPS Discoverable Materials List – Controlled Substances (Qualitative Analysis);

8. *See* Exhibit C – DEA Laboratory Discoverable Materials List – Controlled Substances (Qualitative Analysis);

9.   *See* Exhibit D – APD Laboratory Discoverable Materials List – Controlled Substances (Qualitative Analysis);

10.  *See* Exhibit E – FBI Laboratory Fingerprint Discovery.


## III. TELEPHONE RECORDS USED BY ALL CONFIDENTIAL HUMAN SOURCES

1.   All cellular telephone bills/invoices, telephone local toll and long distance records and text messages for the cellular telephone that law enforcement gave Eric Duran, a.k.a. "Crazil," a.k.a "Ironman," 505-218-1861, cellular telephone number 505-231-2844,[3] Eric Duran's law enforcement handler, and any other cellular telephone number that Eric Duran "Crazil" used while working as an agent for law enforcement while incarcerated in the NM DOC; Sammy Griego, unknown phone number (redacted); Mario Montoya, unknown phone number (redacted); Angelo Barela, unknown phone number (redacted); and any and all CHS telephone and text messages related to this indictment.


## IV.  WITNESS INFORMATION AND MISCELLANEOUS ITEMS

1.   A list of lay and expert witnesses that the Government intends to call at trial in each case.

2.   The following information with regard to any expert witnesses the Government intends to call at trial: a written summary and report of any anticipated trial testimony, the witnesses' curriculum vitae, the witnesses' opinions and the bases for those opinions, any documentation of any agreements and/or conversations between law enforcement,[4] the Government and any expert witnesses, including, but not limited to, compensation and time spent rendering the opinion, and a list of any hypothetical questions to be proposed to the experts and the experts' anticipated answers, copies of any manuals,

---

[3]  This request for these cellular telephone records was not included in counsel's initial discovery letter.

[4] This request for records of expert conversations with law enforcement and the Government was not included in counsel's initial discovery letter.

protocols, and procedures utilized by the expert in rendering his/her opinion, copies of all documents that the Government provided to the expert prior to rendering his/her reports, any and all documents that the expert and the laboratory relies on for its licensure and/or accreditation, including, but not limited to:

  a. Albuquerque Police Department Crime Laboratory, Metropolitan Forensic Center, Scientist Manuel S. Gomez, ID #2599 and user Bruce Archer, case number 15- 0687932, and all others.

3. *Giglio* and *Henthorn* Request and Other Items Relating to Government Witnesses:

  a. **Law Enforcement Witnesses**:

  Bryan Acee, Special Agent, Federal Bureau of Investigation ("FBI")

  Sgt. Mike Alba, Las Cruces Police Department

  John Allen, Sgt. Crime Scene Investigations Supervisor, BCSO

  Ben Bourgeois, Special Agent, FBI

  Matt Chance, Task Force Officer, BCSO

  Brad Cooksey, #288, BCSO HEAT Unit, Criminal Investigations Division

  S. Cotton, Det. BCSO HEAT Unit, Criminal Investigations Division

  Sgt. L. Funes, BCSO, HEAT Unit, Criminal Investigations Division

  Abraham Gallardo, Correctional Officer, Metropolitan Detention Center

  Pete Golden, Sgt., Crime Scene Investigations Supervisor, BCSO

  Kevin C. Hallstrom, Detective, Crime Scene Investigations Supervisor, BCSO

  E. Kuebler, Task Force Officer, BCSO

  Nate Lerner, BCSO (Retired)

  Gregg Marcantel, NM Corrections Department Secretary (Former)

  Mac McCaskill, Special Agent, FBI

  A. Medrano, Task Force Officer, BCSO

  Lorenzo Mora, Det. BCSO FAST Unit Criminal Investigations Division

Mark Myers, Task Force Officer, NM Corrections Department

Sergio Munoz, Agent, Las Cruces Police Department

J. Nance, Det. Bernalillo County Sheriff's Department ("BCSO") HEAT Unit

Sarah Rich, Special Agent, FBI

C. Romero, Sgt. BCSO FAST Unit, Criminal Investigations Division

Joseph Sainato, Special Agent, FBI

A. Taylor, Task Force Officer, BCSO

Undercover law enforcement employee on September 10, 2015 alleged deal (Bates # Garcia 13-15)

Any and other law enforcement witnesses that the Government has obtained a report from relating to Mr. Garcia and has listed in its witness lists or intends to call at the trials in these matters.

b.      **Lay Witnesses:**

Mario Paul Montoya, a.k.a. "Poo Poo;"

Eric Duran;

Gerald Archuleta, aka "Sticks," aka "Grandma;"

Sammy Griego;

Angelita Hito;

Woman driver of 1990 Honda;

CHS who allegedly did deal on May 6, 2015;

CHS who allegedly did deal on July 13, 2015;

CHS who allegedly did deal on August 7, 2015 (Garcia Bates 6, 8); who received call from Gerald Archuleta (Garcia Bates 7);

CHS who allegedly did deal on August 11, 2015 (Garcia Bates 9, 10);

CHS who allegedly did deal on November 18, 2015 (Garcia Bates 16, 17);

Glenda Trujillo (May 6, 2014, Garcia Bates 1);

Any and other lay witnesses that the Government has listed in its witness lists or

intends to call at the trials in these matters.

c.   **Expert Witnesses**

Albuquerque Police Department Crime Laboratory Metropolitan Forensic Science Center, Forensic Scientist Manuel S. Gomez, ID #2599, and user Bruce Archer, case number 15-0687932;

Cheryl M. Serena, Forensic Scientist, Southern Forensic Laboratory;

Peter Erik Peterson, Ph.D.;

Supervisory Physical Scientist/Forensic Examiner, FBI Laboratory, Latent Print Operations Unit;

Scott Wischnewski, Senior Drug Chemist, Department of Justice, Drug Enforcement Administration, South Central Laboratory, Dallas, TX;

Bryan Acee, Special Agent, Federal Bureau of Investigation;

Any and other expert witnesses that the Government has listed in its witness lists or intends to call at the trials in these matters.


4. Other Items Requested

a. Entire BCSO, APD, New Mexico State Police, FBI, DEA, Metropolitan Detention Center, NM Department of Corrections, Las Cruces Police Department, U.S. Marshal Service, and any and all other law enforcement agency Reports of Investigation and Case Supplemental Reports, FD-302s, or a report of investigation by whatever name, regarding the allegations in the indictments, including any uncharged relevant conduct or search warrants executed, including, but not limited to, Case Nos. 15-735204; 14-641640, 14-641623, (H)15-01-038, 2015-18720, 15-0687932, 15-0699156, 15-689616, 281D-AQ-6239655) (see above for additional case numbers).

b. A copy of all judicial orders, FBI wiretaps, sealed or unsealed, regarding any NM Department of Corrections inmate use, (*See* Bates #: Garcia 57 for "FBI wiretaps"

language)[5] specifically, but not limited to, Eric Duran, a.k.a. Ironman, of cellular telephones (including, but not limited to 505-218-1861) inside any New Mexico Department of Corrections facilit(ies), county jail, or detention center involving the allegations in the above referenced indictments, and any Rule 404(b) or uncharged conducts of any defendant or cooperating defendant or witness.

c. A copy of all judicial subpoenas *duces tecum*, all administrative subpoenas, and subpoena returns and correspondence from the entity or individual subpoenaed, including, but not limited to, all attachments that were served on any and all telephone providers, correctional facilities, and any other source(s) of investigative information[6] that will be used in these cases.

d. A copy of all photographs, video, and crime scene or search warrant sketch(es) relating to the allegations in the indictments and any and all search warrant and any subsequent investigative photographs and video taken, including, but not limited to, any and all surveillance photographs (and accompanying logs/reports);

e. Entire Albuquerque Police Department Crime Laboratory, Metropolitan Forensic Science Center reports relating to all case numbers listed above, and any and all relevant case numbers related to the indictments in these cases, including the pending laboratory reports and results from the testing currently being conducted on the alleged narcotics allegedly found pursuant to the multiple search warrants, including, but not limited to the examiner's report, notes, recordings, all investigator(s) notes, working papers, recordings and final reports (see above);

f. Entire criminal history, charging documents, plea and sentencing documents, and State and Federal Probation/Supervised Release documents for Mr. Christopher Garcia, including his State and Federal penitentiary ("PEN") packs, both CONFIDENTIAL

---

[5] This Bates # reference for "wiretaps" was not included in counsel's initial discovery letter.
[6] This request for and any other source(s) of investigative information was not included in counsel's initial discovery letter.

and non- confidential, NM DOC STIU files and any all gang intelligence reports mentioning  Christopher Garcia.

g. Entire criminal history, charging, and plea and sentencing documents for any and all CHSs, cooperating defendants/witnesses against Mr. Christopher Garcia.

h. The entire Metropolitan Detention Center, (and any other NM county jail), NM State Department of Corrections, and Federal Bureau of Prisons records of Christopher Garcia, including, but not limited to, records from initial dates of incarceration, security records, medical/mental health and prescription records, educational records, work and commissary records.

i. All prior statements (written and/or oral) from any witness that the Government intends to call at trial, including, but not limited to, all witnesses State of New Mexico and Federal Grand Jury transcripts.

j. Any and all law enforcement, police, Task Force Agent, Special Agent, and other State or Federal criminal or corrections investigators, intelligence analyst(s) or prison gang intelligence officers, and Assistant United States Attorneys (AUSAs) emails, text messages, rough notes, work papers, drafts or preliminary or supplemental reports, summaries or recordings, including, but not limited to, all the charged and uncharged allegations against Christopher Garcia, relating to the allegations in the indictments or any alleged relevant or Rule 404(b) conduct not yet formally charged.

k. Any and all electronic communications, including emails or texts messages between the United States Attorney's Office for the District of New Mexico (any AUSAs assigned on the instant cases, or involved in the filing of any related search warrants in these matters) and any and all law enforcement officers, State and Federal Agents, intelligence analyst(s), or prison gang intelligence officers participating in the investigation of the instant cases;

l. Any and all electronic communications, including emails or texts messages between any law enforcement officer, Task Force Officer, Special Agent, intelligence analyst(s),

prison gang intelligence officers participating in the investigation of the instant cases, to any witness that was interviewed by law enforcement in the above referenced cases;

m. A copy of all law enforcement, including but not limited to, Albuquerque Police Department ("APD") BCSO, any local, state, federal law enforcement officers belt tapes, lapel camera recordings/videos, dashboard camera recordings, CADs reports regarding any and all events (itemized above) involving Christopher Garcia, including, but not limited to all the allegations charged and uncharged in the indictments.

n. A list of all evidence and chain of custody for evidence maintained in any law enforcement custody relating to the charges or any 404(b) or uncharged conduct of Christopher Garcia.

o. Notice of all evidence that will be used in the Government's case in chief against Mr. Garcia, in all indictments, pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B).

p. Recordings and transcripts of all law enforcement interviews (local, state, or federal) or other recorded conversations with any other witnesses the Government intends to call at trial from 2004[7] through the date of sentencing in this matter.

## V. REQUEST TO VIEW DRUG EVIDENCE, AND ALL LABORATORIES THAT CONDUCTED THE DRUG TESTING, AND INDEPENDENT TESTING OF ALL THE DRUG EVIDENCE.

1. The defense respectfully and immediately requests viewing of all the drug evidence (charged and uncharged) in this case;

2. The defense respectfully and immediately requests viewing of all the laboratories that conducted the drug analysis of all the drug evidence (charged and uncharged) in this case;

3. The defense respectfully and immediately requests an independent laboratory testing of all drug evidence (charged and uncharged) in this case.

---

[7] This request was modified to 2004 from 2010 in the defendant's initial letter request.

## VI. REQUEST TO VIEW NM DOC LEVEL VI CELL WHERE ERIC DURAN ALLEGEDLY MADE PHONE CALLS TO MR. GARCIA.

1. The defense respectfully and immediately requests an independent (without the Government) viewing of NM DOC, PNM, Level VI, Santa Fe, NM where all the CHS cellular phone calls commenced, which allegedly lead to the indictments in these matters.

## VII. REDACTED PAGES OF ALL DISCOVERY AND IMMEDIATE IDENTIFICATION OF ALL CHSs, COOPERATING INFORMANTS, COOPERATING DEFENDANTS.

1. The defense respectfully and immediately requests a complete unredacted set of all discovery for all Government productions;

2. The defense respectfully and immediately requests a complete and unredacted set of discovery of all CHSs, Cooperating Informants (CIs), Cooperating Defendants (CDs), and Cooperating Witnesses, (CWs), including those itemized above and, Eric Duran, Sammy Griego, Angelita Hito, Thomas Clark, Fred Quintana, Mario Montoya, Gerald Archuleta, among others. The defense specifically requests all law enforcement reports on any and all CHSs relating to all charged and charged allegations in the indictments, all statements to law enforcement entities, all records of payments made by, and benefits from law enforcement, including, but not limited to all payments to any CHS during the period of this investigation (2014-2016), drug use and trafficking history, background with law enforcement, payments from law enforcement, criminal history, among other law enforcement reports regarding his/her status as a CHS, among others.

**VIII. NM DOC POLICIES, PROCEDURES; THE STIU AND RIP PROGRAM MANUALS**.

1. All NM DOC policies, procedures and documentation in effect at the time Mr. Garcia was housed at NM DOC, including, but not limited to, the STIU and RIP Program policies, all movement logs, movement in the pods Mr. Garcia was housed at, and work orders in all pods, that Christopher Garcia was housed in while at the NM DOC.

2. Any and all documentation maintained at the NM DOC regarding the Syndicato de Nuevo Mexico ("SNM"), the alleged prison gang, and SNMs involvement in the STIU and RIP programs.

**IX. SYNDICATO DE NUEVO MEXICO ("SNM") ALLEGED ENTERPRISE EVIDENCE**.

1. Any and all evidence of any distribution of drug profits to the SNM or co-defendants, including, but not limited to, all the allegations regarding the SNM in the first fourteen (14) paragraphs of indictments 15-CR-4268 and 16-CR-1613.

**X. PRIOR LAW ENFORCEMENT CONTACTS WITH CHRISTOPHER GARCIA**.

1. Any and all prior law enforcement contacts with Mr. Garcia, since January 1, 2004, including, but not limited to, the shooting of Christopher Garcia, and all subsequent law enforcement investigation; all law enforcement telephonic and in person contact with Christopher Garcia, whether properly documented or not, including all photographs taken by Officer Lerner and law enforcement of Christopher Garcia's tattoos after conducting alleged traffic stops on Christopher Garcia, with or without probable cause, prior to his arrest in these federal cases.

**XI. TRANSCRIPTS OF AUDIO RECORDINGS**.

3. CHS 73437

   1. Conversation taking place in November 2015 (0730.002).

   2. Conversation taking place in November 2015 (0730.003).

4. CHS 70206

   1. Any/all transcripts of audio including this CHS.


5. CHS 28708

   1. Any/all transcripts of audio including this CHS.

6. CHS 74844

   1. Recording with Rudy Perez (2/1/16–2/4/16) (1168.011).

7. CHS 74844

   1. Recordings with Carlos Herrera and Rudy Perez.

   2. 2373.001-2373.023

8. CHS 75022

   1. Recordings with Carlos Herrera.

   2. Recordings with Alex Munoz.

## XII. CONCLUSION.

Based on the foregoing, Christopher Garcia respectfully requests that the Court enter an order requiring the Government to produce the above-listed items.

s/ *Amy Sirignano, Esq.*
Amy Sirignano
Law Office of Amy Sirignano, PC
5901J Wyoming Blvd. NE, #250
Albuquerque, NM 87109
505-242-2770
505-242-2774 facsimile
amy@abqnmlaw.com

s/ *Christopher W. Adams*
Christopher W Adams
102 Broad Street
Suite C
Charleston, SC 29401
(843) 577-2153
Fax: (877) 883-9114
Email: adams.c@me.com

*Counsel for Defendant Christopher Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was served to opposing counsel via the CM/ECF system on this 25th day of February, 2017.

/s/ *electronically filed*
Amy Sirignano