IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case Nos.: 15-CR-4275-JB
                                                         15-CR-4268-JB
                                                         16-CR-1613-JB

CHRISTOPHER GARCIA,
ANGEL DELEON, ET AL.,
ANTHONY RAY BACA, ET AL.,

    Defendants.

**MOTION TO COMPEL LAW ENFORCEMENT TO RECORD INTERVIEWS
AND TIMELY MEMORIALIZE ALL STATEMENTS**

       Christopher Garcia, by and through co-counsel of record Amy Sirignano, Esq., of the Law Office of Amy Sirignano, PC, and Christopher W. Adams, hereby move this Court for an Order compelling all FBI agents, New Mexico law enforcement officers, and officers of the Security Threat Intelligence Unit ("STIU") of the New Mexico Department of Corrections, to make audio and/or visual recordings of all interviews with all potential witnesses in this matter. Mr. Garcia also respectfully requests that this Court order the generation of written FBI FD-302 reports within five (5) days of witness interview, per the standard operating procedure of the FBI, and pursuant to each Department's policies. As grounds, counsel states:

## RELEVANT FACTS

Mr. Garcia is charged with various crimes in three separate Indictments. In a stand-alone Indictment, case number 15-CR-4275, Mr. Garcia is charged with four crimes: Counts 1 and 3: Distribution of Heroin in violation of 21 U.S.C. §§841(a)(1) and b(1)(C); Count 2: Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count 4: Distribution of 100 Grams and More of Heroin, in Violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Doc. 2, 15-CR-4275). If he is convicted, he could be imprisoned for the remainder of his life.

In a Superseding Indictment, case number 15-CR-4268, Mr. Garcia, along with multiple codefendants, is charged with being a member of the Syndicato de Nuevo Mexico gang. Mr. Garcia is alleged to have committed two counts of Violent Crimes in Aid of Racketeering (Conspiracy to Murder) in Violation of 18 U.S.C. § 1959 (a)(5) (Doc. 368, Counts 8 and 10, 15-CR-4268). Mr. Garcia was also charged with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and Using and Carry a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). (Doc. 368, Counts 11 and 12, 15-CR-4268). If he is convicted, he could be imprisoned for the remainder of his life.

In case number 16-CR-1613, Mr. Garcia is charged, along with numerous codefendants, with being a member of the Syndicato de Nuevo Mexico gang and having committed Violent Crimes in Aid of Racketeering (Conspiracy to Murder) in Violation of 18 U.S.C. § 1959 (a)(5) (Doc. 2, 16-CR-1613). If he is convicted, he could be imprisoned for the remainder of his life.

On information and belief, and based on sources known to the defense, after the inception of the indictments in the above styled causes, agents with the Federal Bureau of Investigation (FBI), Officers with the Bernalillo County Sheriff's Office, and officers at the New Mexico Corrections Department, Security Threat Intelligence Unit (STIU) have conducted interviews with detained inmates within the New Mexico prison system. According to those same sources, in those interviews with detained inmates, FBI, BCSO, and STIU agents have attempted to obtain statements from inmates about the indicted codefendants by threatening the interviewees with inclusion in the RICO indictment if they do not cooperate and make statements. *See* Exhibit A.

Because the VICAR and RICO cases, case numbers 15-CR-4268 and 16-CR-1613, carry a penalty of life in prison or death, any interviewee so threatened could easily have been ccoerced into making a false statement in order to save their lives at the expense of another's. Relying on such statements at trial would be a grave injustice.

Throughout the course of proceedings in the above-captioned cases, the FBI has been remiss in preparing and reluctant to disclose reports of interviews ("FD-302 statements"). On July 8, 2016, during Motion Proceedings for case number 16-CR-1613, this Court heard motions from Marshall Ray and Kari Morrissey, counsel for codefendant Richard Gallegos, and from Amy Sirignano, counsel for Mr. Garcia. *See* Exhibit B, Transcript of hearing pp. 29-33, 56-57. Counsel for both defendants informed this Court that they had not received written FD-302s or audio recordings from interviews that federal agents had conducted, in violation of the agents' standard operating procedure. *See id.*; Exhibit B (excerpt of FBI Domestic Investigations and Operations Guide ("DIOG")).

The Government responded that it had turned over discovery pursuant to the Court's orders. Exhibit A at p. 57-58. The Court then found that the government was providing discovery and denied Mr. Gallegos' and Mr. Garcia's motion. *See id*. at p. 59.

Counsel for Mr. Garcia have received little audio or video recording of interviews of prospective witnesses in federal custody. Nor have defense counsel received any written FD-302s summarizing these interviews. *But see* Exhibit C (FD-302 required for litigation, recording strongly encouraged). While law enforcement nationwide has adopted recording standards to enhance public trust, the FBI has refused to bring its interrogation procedures in line with best practices to insure accurate records and public confidence in the justice system. Harvey Silvergate, *Unrecorded Testimony*, Boston Globe May 11, 2013 (available at https://www.bostonglobe.com/opinion/2013/05/10/beware-fbi-when-not-recording/yz55UX8WMKU080pN4aP68K/story.html).

STIU does not have specific procedures around providing assistance to other investigative agencies, but the New Mexico Corrections Department procedures require thorough documentation of investigations with timely reports. *See* Exhibit D, at 6 and 12-14 (NMCD policy CD 0901000 and 090101). If STIU participated in law enforcement interviews, they were trained to document that participation. If they were instructed *not* to follow that training, that evidence is critical exculpatory evidence that due process requires Mr. Garcia have, to impeach the investigation. *Kyles v. Whitley*, 514 U.S. 419, 445 (1995).

The Bernalillo County Sheriff's Office is playing a prominent role in this investigation and prosecution as many of the alleged RICO overt acts started in State

Court. Local law enforcement have policies regarding recording interviews and contacts with the public, and are encouraged to do so on official business except when, for instance, meeting with an undercover officer. *See* Exhibit E (Bernalillo County Sheriff's Office policy on recording public contacts); James D. Ginger, *Monitor's Fourth Report Compliance of the Albuquerque Police Department and the City of Albuquerque with Requirements of the Court Approved Settlement Agreement*, filed as Doc. 223 in cause no. 1:14-CV-01025 RB-SMV (covering compliance with a court order for Albuquerque Police Department to record public contacts).

In order to protect against the very real threat that law enforcement agents have been and will continue to coerce involuntary statements from detained inmate witnesses in the cases at bar, this Court should order that all law enforcement, including agents with the FBI, BCSO and STIU, audio and/or video record interviews of detained inmates and other interviewees immediately, including all defendants in this case, who law enforcement approach to make statements against any defendant in these cases. This Court should further mandate that law enforcement agents timely memorialize their interviews in FD-302 statements within five (5) days of interview, per standard operating FBI procedures, and pursuant to each relevant department's policies.

## ARGUMENT

### Only Voluntary Statements are Admissible Under the U.S. Constitution

It is well established that coerced statements are involuntary and inadmissible at trial. "The Supreme Court recognizes two constitutional grounds on which involuntary statements by a criminal defendant are inadmissible — the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment."

Katherine Sheridan, Excluding Coerced Witness Testimony to Protect a Criminal Defendant's Right to Due Process of Law and Adequately Deter Police Misconduct, 38 Fordham Urb. L.J. 1229, 1229-30 (2010).

"[T]he [U.S.] Supreme Court demands that police refrain from using coercive interrogation techniques to elicit involuntary confessions from a criminal defendant." *See id*. at 1224 (citing *Rogers v. Richmond*, 365 U.S. 534, 541 (1961)). The government always bears the burden of proving voluntariness. *United States v. Lopez*, 437 F. 3d 1059, 1063 (2006); *United States v. Harrison*, 639 F. 3d 1273, 1278 (2011). When a statement is obtained by contrasting threats of prosecution against promises of leniency by investigators, that confession is involuntary. *Lopez*, 437 F.3d at 1062 and 1064-1065.

"[T]he exclusionary rule protects the legitimacy of the Constitution itself, and exclusion is needed because of the danger of unreliable evidence, and because of a sense of fundamental unfairness best expressed as the 'deep-rooted feeling that the police must obey the law while enforcing the law'." *See* Sheridan, at 1224 (citing *Rogers v. Richmond*, 365 U.S. 534, 541 (1961)); *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006) (suppression required when evidence would not have been obtained but for the violation).

A "defendant['s] due process rights would be implicated if the subject witness was coerced into making false statements and those statements were admitted against defendants at trial." *United States v. Gonzales*, 164 F.3d 1285, 1289 (10th Cir. 1999) (emphasis in original omitted). Involuntary statements obtained through coercive means are therefore inadmissible, whether the statements are by a defendant or a witness. *Id.*; *Lopez*, 437 F.3d at 1066.

In the present case, on information and belief, law enforcement officers are threatening to charge potential witnesses with possible death-penalty eligible charges unless they make statements against the codefendants. This Court would be bound to exclude any false statements elicited as a result of such tactics because it would offend Mr. Garcia's due process rights under the U.S. Constitution. *Gonzales*, 164 F.3d at 1289, *Lopez*, 437 F.3d at 1066. Because a coerced witness would not change his story for fear of suffering the sentence initially threatened *plus* charges of making false statements to law enforcement and/or perjury, the only sure source of evidence to confirm or disprove coercive interrogation techniques is in requiring any interviews to be recorded, and those recordings as well as any reports of interviews and notes must be turned over the defense. *Kyles,* 419 U.S. at 445*;* Exhibit B, at 2 (notes to be retained if the interview is subject to litigation). FD-302 reports of any interviews conducted by FBI agents and raw notes must also be disclosed without any (further) delay; even if agents did not intend to coerce interview subjects, their questions and the interviewees' responses should be documented before intervening time blurs events into irretrievability. *Id.*

### **This Court Should Require Law Enforcement to Record Interviews Of Detained Inmates to Protect Against Coercive Police Tactics That Produce Involuntary, Inadmissible Statements**

Recording interviews with detained inmates not only makes sense as a way of preventing "he-said, she-said" debates about what occurred in an interview, but it produces a multitude of other benefits. *See generally* Silvergate (discussing several reasons why recordings build public trust). Recordings help promote transparency and trust, prevent coercive police tactics, reduce false confessions, decrease motion practice, and, ultimately, prevent wrongful convictions.

> Twenty-first century policing requires law enforcement to effectively reduce crime, while establishing trust and legitimacy with the communities they serve. Electronic recording of custodial interviews can help law enforcement meet these demands by providing an irrefutable account of what transpired during a critical interaction between police and suspects. The practice can prevent false confessions and substantiate authentic ones—increasing overall public confidence in the justice system. There is a growing national movement to electronically record custodial interviews. Currently, 18 states and the District of Columbia have mandated the practice either by statute (CT, IL, MD, MI, Mo, Mt, NE, NM, NC, OR, VT, WI) or court action (AK, IN, MA, ME, MN, NJ). In another four states the vast majority of law enforcement agencies have voluntarily implemented the practice (AZ, HI, UT, RI). In addition, hundreds of individual jurisdictions throughout the country have adopted electronic recording of interviews on their own.

The Innocence Project, *Implementing Electronic Recording of Custodial Interviews: A Primer for Law Enforcement,* Custodial Interview Laws Are Catching Fire!, Case Cracker (Oct. 17, 2016), http://www.casecracker.com/2016/10/17/custodial-interview-video-laws-catching-fire/.

The Department of Justice's own policy, effective July 11, 2014, created a presumption that federal agents, including FBI agents, should audio record or videotape any interviews with any individual in federal custody between arrest and prior to their first appearance. *See* Attorney General Holder Announces Significant Policy Shift Concerning Electronic Recording of Statements: New Guidelines Create Presumption That Interviews of Federally Detained Persons Will Be Electronically Recorded, Department of Justice: Office of Public Affairs (May 22, 2014), https://www.justice.gov/opa/pr/attorney-general-holder-announces-significant-policy-shift-concerning-electronic-recording.

Attorney General Eric Holder stated the reason for the policy:

> Creating an electronic record will ensure that we have an objective account of key investigations and interactions with people who are held in federal custody. . . . It will allow us to document that detained individuals are afforded their constitutionally-protected rights. And it will also provide federal law enforcement officials with a backstop, so that they have clear and indisputable records of important statements and confessions made by individuals who have been detained . . . . The policy also encourages agents and prosecutors to consider electronic recording in investigative or other circumstances not covered by the presumption . . . . [The policy] will reduce uncertainty in even the most sensitive cases, prevent unnecessary disputes, and improve our ability to see that justice can be served.

*See id.* The Court would not be imposing any undue burden on FBI agents if they were ordered to follow their policy, or were required to turn over recordings made in accordance with it. *See Kyles*, 419 U.S. at 445 (the quality of the investigation is subject for impeachment).

The Albuquerque Police Department Procedural Orders rules and procedures for custodial interviews and interrogations states department personnel will "electronically record all custodial interrogations in their entirety" in accordance with New Mexico Law. *See* Albuquerque Police Department Procedural Orders, SOP 2-68-2(A)(1)(a) (effective Jan. 1, 2016), https://sflinks.cabq.gov/THyzJgCi2vU/ (hereinafter APD SOP). The applicable New Mexico law applies to state and local law enforcement officers to electronically record custodial interrogations when reasonably able to do so. *See* N.M. Stat. Ann. § 29-1-16 (2005). The New Mexico statute excludes correctional facilities as a required location to electronically record custodial interrogations, but Corrections Department policy requires that investigations be promptly documented. Exhibit D. The APD policy implies broader application to all custodial interrogations being

electronically recorded, no matter the location, due to noticeable lack of reference to correctional facilities in the policy. *See* APD SOP 2-68-2.

APD personnel are required to include advice of the constitutional rights of the interviewee on the recording. *See id*. at 2-68-2(A)(1)(c). The APD policy requires the interviewing officer to document that the interview was electronically recorded or document the reason for not recording the interview. *See id*. at 2-68-2(A)(2). There are two exceptions listed for not recording an interview: a) "[t]he recording equipment failed prior to completion of the interview;" b) "[t]he individual refuses to be recorded." *See id*.

## This Court Should Order That FD-302s Be Completed Within Five (5) Days After the Interview

The FBI Manual of Administrative Operations and Procedures requires the following: "**Recording Results of Information on Report Form (FD-302)** 'The preparation of the FD-302 should be effected within five days following the final interview session.'" *See* R. 10-13.3(11)(c), <u>FBI Manual of Administrative Operations and Procedures (MAOP) 2007</u>, https://archive.org/stream/FbiManualOfAdministrativeOperationsAndProceduresmaop2007/MAOPP2_Sec_10_WRITTEN_COMMUNICATIONS_djvu.txt (last visited Jan. 27, 2017); *cf* Exhibit B, at 2 (time limit appears to have been redacted). Mr. Garcia respectfully requests that this Court simply enforce the FBI's internal policy requiring agents to generate 302 statements within five (5) days of interview. While defense counsel was unable to discover what the internal policies are for written statements for the STIU at the Department of Corrections, it would be a reasonable timeframe for this Court to order all law enforcement, not just the FBI, to provide written summaries of statements made by detained inmates within five days of the interview. The five-day

time limit will promote the timely dissemination of discovery so that Mr. Garcia can adequately prepare his defense and conduct investigations prior to trial.

## **CONCLUSION**

Since there is information that law enforcement is threatening potential witnesses with inclusion in the RICO indictments in the above styled cases, there is a great risk that these coercive police tactics will produce involuntary statements. Under the U.S. Constitution, coerced statements are involuntary and inadmissible. This Court should grant Mr. Garcia's motion to compel law enforcement to audio or videotape all interviews with potential witnesses who are in custody so as to prevent the FBI, STIU, and other law enforcement from eliciting involuntary statements, the admission of which would violate Mr. Garcia's Fifth and Fourteenth Amendment rights. A requirement that law enforcement write out their 302 statements within five days of any interview with a detained inmate will also help hasten the discovery process, leading to greater judicial economy.

Respectfully Submitted,

/s_____
Amy Sirignano, Esq.
Law Office of Amy Sirignano, PC
5901J Wyoming Blvd. NE
Suite 250
Albuquerque, NM 87109
(505) 242-2770
(505) 242-2774 facsímile
amy@abqnmlaw.com
*Counsel for Christopher Garcia*

/s_____
Christopher W Adams
102 Broad Street, Suite C
Charleston, SC 29401
(843) 577-2153
Fax: (877) 883-9114
Email: adams.c@me.com
*Counsel for Christopher Garcia*

CERTIFICATE OF SERVICE
I certify that the foregoing pleading was sent via the Court's CM/ECF server to counsel for the government, this 28th day of February, 2017.

/s_____
Amy Sirignano, Esq.