IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

v.                 NO. 15-CR-4275 JB

CHRISTOPHER GARCIA,

   Defendant.

## MOTION FOR PRESERVATION AND DISCLOSURE
## OF ROUGH NOTES AND RECORDINGS

   COMES NOW Christopher Garcia, by and through counsel Amy Sirignano and Christopher W. Adams, pursuant to the Jencks Act, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), *Kyles v. Whitley*, 514 U.S. 419 (1995), *Youngblood v. West Virginia*, 547 U.S. 867 (2006), and *Smith v. Sec'y of NM Dep't of Corr.*, 50 F.3d 801 (10th Cir. 1995), to respectfully move the Court for an order directing the government to preserve and disclose all rough notes, work papers, documents compiled by and used, and recordings in this case by all law enforcement agents, including the FBI, who worked on this case. Mr. Garcia further requests all rough notes, work papers, drafts, and document compilations by all persons the government proposes to call as experts. The basis for this motion is as follows:

   1.  It is the practice of conscientious law enforcement officers to take notes during interviews, particularly when the interview is not being electronically recorded. The officers, as well as the prosecutors, undoubtedly use such notes in preparation for additional investigation, motion hearings and trial. As such, Mr. Garcia requests this Court to order the government to retain and disclose to the defense, any and all rough interview notes taken by all law enforcement

agents working in this case (including any state and federal law enforcement officers and agents), and their respective representatives, employees and designees, during the course of the investigation of this case.

2. "[T]he "prosecution" for *Brady* purposes encompasses not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, as well as law enforcement personnel and other arms of the state involved in investigative aspects" of the case. *Smith*, at 824 (internal citation omitted). "The Tenth Circuit has affirmed the principle time and time again that suppressed evidence in the hands of police or other agents of the prosecution still amounts to a *Brady* violation even if the prosecutor himself had no direct knowledge of the evidence in question." *Case v. Hatch*, 773 F. Supp. 2d 1070, 1077-78 (D.N.M. 2011). Therefore, the rough notes, work papers, documents compiled by and used, and recordings may contain material exculpatory evidence within the meaning of *Brady* and *Kyles*, and should be disclosed in compliance with Fifth Amendment due process.

3. Additionally, it is the practice of conscientious experts to follow the same notating procedures when conducting their examinations. As such, Mr. Garcia requests this court to order the government to retain and disclose to the defense any and all rough notes, work papers, drafts, and document compilations produced by all experts, their respective representatives, employees and designees during the course of any analysis relating to any proposed expert testimony in this case.

4. Mr. Garcia also respectfully moves the Court to order the government to disclose the above-referenced materials within the meaning of the Jencks Act, 18 U.S.C. § 3500.

## I. BACKGROUND

5. On December 1, 2015, Mr. Garcia was charged, in a stand-alone Indictment, case number 15-CR-4275, with: Counts 1 and 3: Distribution of Heroin in violation of 21 U.S.C. §§841(a)(1) and b(1)(C); Count 2: Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count 4: Distribution of 100 Grams and More of Heroin, in Violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); Count 5: 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) Possession with Intent to Distribute 100 Grams and More of Heroin; 18 U.S.C. § 2: Aiding and Abetting; and Count 6: 21 U.S.C. §§ 841(a)(1), (b)(1)(D): Possession with Intent to Distribute Marijuana; 18 U.S.C. § 2: Aiding and Abetting. (Doc. 2). If he is convicted, he could be imprisoned for the remainder of his life. This case is related to cases 15-CR-4268 and 16-CR-1613.

6. It is suspected that at least three cooperating witnesses, SNM members Eric Duran, Sammy Griego, and Mario Montoya, may be called as witnesses in this case. It is possible that other cooperating witnesses may be called as government witnesses. There are also lab technicians and forensic fingerprint and audio experts who will be called regarding the alleged narcotics that form the basis for the six counts.

7. The government agents' notes, including any and all rough interview notes taken by all law enforcement agents working in this case (including any state and federal law enforcement officers and agents), and their respective representatives, employees and designees, during the course of the investigation of this case, are very important in this case to determine the facts at issue in this dispute and may contain exculpatory information.

## II. LEGAL BASES TO RETAIN/DISCLOSE ALL ROUGH NOTES

### A. Scope of Government's Duty.

#### 1. Scope of Exculpatory Information.

8. Defense counsel has a right to material exculpatory information under the Fifth and Sixth Amendments to the United States Constitution, *Brady*, Federal Rule of Criminal Procedure 16, *Kyles*, *Smith*, *Banks*, *Strickler*, and *Cone*. *Banks v. Reynolds*, 55 F.3d 1508, 1518 (10th Cir. 1995), *Strickler v. Greene*, 527 U.S. 263, 289-290 (1999), *Cone v. Bell*, 556 U.S. 449, 471-475 (2009). The *Brady* Court observed: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system or the administration of justice suffers when any accused is treated unfairly." 373 U.S. at 87. "To establish a Brady violation, the defendant must first show the government failed to disclose favorable evidence. The defendant does not have to establish bad faith." *United States v. Ford*, 550 F.3d 975, 982 (10th Cir. 2008). This obligation on the "prosecution" extends not only to attorneys for the government, but to law enforcement agents involved in the investigation. *See*, *e.g.*, *Kyles*, at 438 (noting that the government can institute procedures to obtain information unavailable to the defense); *Smith v. Sec'y of NM Dep't of Corr.*, 50 F.3d 801, 824 ("the 'prosecution' for Brady purposes encompasses not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, as well as law enforcement personnel and other arms of the state involved in investigative aspects" of the case).

9. The prosecution has the duty to disclose information even if it is normally inadmissible at trial. For instance, "[w]hether the evidence would have been admissible as substantive or impeachment evidence does not alter our conclusion that the evidence is subject to disclosure under *Brady*." *Scott v. Mullin*, 303 F.3d 1222, 1231 (10th Cir. 2002).

10. For this reason, all rough notes, work papers, documents compiled by and used, and recordings in this case by all law enforcement agents, and all rough notes, work papers, drafts, and document compilations by all persons the government proposes to call as experts may provide *Brady* evidence, and are therefore subject to retention and *Brady* disclosure.

## 2. Scope of duty to Retain/Disclose Rough Notes.

11. Mr. Garcia requests this Court to order the government to retain and disclose to the defense, any and all rough notes, work papers, documents compiled by and used, and recordings taken by all law enforcement agents (including state and federal law enforcement officers and agents), and their respective representatives, employees and designees, during the course of interviews with any person questioned during the investigation of this case.

12. Additionally, Mr. Garcia requests this Court to order the government to retain and disclose to the defense, any and all rough notes, work papers, documents compiled by or used, and recordings taken by any experts that the government intends to call at trial, and their respective representatives, employees and designees, during the course of interviews with any person questioned during the investigation of this case.

13. Agent/expert witnesses often make notes describing events contemporaneously to their actions, or as soon afterward as reasonably possible. These notes are later vetted and scrubbed and often referred to during meetings with other agents/experts prior to formal transcription. Once the reports are finalized they are subject to proofreading and approval. These notes are utilized to prepare their final reports and are subject to retention pursuant to law enforcement regulations, policies, or habits, and are adopted as statements in connection with report preparation. *Cf United States v. Smith*, 984 F.2d 1084, 1086 (rejecting the requirement that defendants prove rough notes constitute a "statement" before they are reviewed or

disclosed).  By requesting this motion, the defense is alerting the government of the potential relevance to the case of the rough notes and other listed materials.

14. The District of New Mexico has previously held that government investigator's rough notes are *Brady* material, as explained in *Kyles*.  *See*, *e.g.*, *United States v. Lujan*, 530 F. Supp. 2d 1224, 1266-1266 (D.N.M. 2008) (even work-product protected by Fed. R. Crim. Proc. 16(a)(2) is subject to disclosure if material under *Brady* or pursuant to the Jencks Act 18 U.S.C. § 3500).  "The Tenth Circuit in *Sullivan* plainly recognizes the proposition that an officer's handwritten notes made during interviews of government witnesses and informants may be *Brady* material if exculpatory and material."  *United States v. Cooper*, 283 F. Supp. 2d 1215, 1237 (D. Kan. 2003) (citing *United States v. Sullivan*, 919 F.2d 1403 (10th Cir. 1990).  These holdings comport with holdings in other circuits, as well.  *See*, *e.g.*, *United States v. Vella*, 562 F.2d 275, 276 (3d Cir.1977) (per curiam) ("rough interview notes [of DEA agents] should be kept and produced"); *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir.1983) ("the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced").

15. The range of discoverable material is limited by the rights of defendants, not by the form in which the material is recorded.  For instance, text messages from the cellular phones of investigating agents have been found to be analogous to rough notes and draft reports.  *See* Opinion (Doc. 61-1), *United States v. Suarez*, No. 09-CR-932 JLL, at 12-13, 2010 WL 4226524, at *6 (D.N.J. 2010) (unpublished); *see also* Andrew D. Goldsmith, *Trends – Or Lack Thereof – In Criminal E-Discovery: A Pragmatic Survey of Recent Case Law*, E-Discovery No. 59-3, at 8-9 (Department of Justice 2011) (available at

http://www.justice.gov/usao/eousa/foia_reading_room/usab5903.pdf) (advising federal prosecutors of *Suarez* and recommending that "preservation of text messages should not be overlooked").

16. Due to the nature of the indictment, it is safe to assume that evidence and cross-examination by the government will be predicated on out-of-court statements. As a result, it would be a violation of the Jencks Act and of *Brady* and its progeny to destroy any law enforcement agent "rough notes."

### 3. Timing of Disclosure.

17. Because the requested material is *Brady/Kyles* material, in addition to being Jencks Act material, this information should be disclosed early in the case with enough time to avoid a potential *Brady* violation. *See*, *e.g.*, *Lujan*, 530 F.Supp.2d 1224, 1256 (D.N.M. 2008) ("the Tenth Circuit strongly disapproves of delayed disclosure of *Brady* materials"). Disclosure sufficiently late to prevent investigation may create a reasonable probability of a different outcome and thus a *Brady* violation, and late disclosures generally "highlight[] the need for vigilance by prosecutors in ensuring that government agents are informed of and respect *Brady* requirements." *United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir. 1997) (finding no violation due to defense's ability to effectively cross-examine witness, but admonishing the government for late disclosure).

18. In *Moore's Federal Practice*, it is stated that "the court should require a turnover in advance of testimony to avoid delaying the trial while counsel peruses the material." Section 16.10 (1), at p. 177 (LexisNexis, 3rd Ed. 1997) (1938). Recent DOJ guidance makes clear that it is in most cases, broad and liberal disclosure early in the case and certainly upon direct request is the best practice for the goals of a more accurate and more efficient criminal justice system. *See*,

*e.g.*, Deputy Attorney General David W. Ogden, *Memorandum for Heads of Litigating Components Handling General Matters* (January 4, 2010) (available at http://www.justice.gov/dag/dag-to-usas-component-heads.html) ("Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of a case" unless countervailing considerations outweigh the benefits).

### III. CONCLUSION

For all of the foregoing reasons, Mr. Garcia respectfully requests that the Court order the government to retain for production and immediately disclose any and all rough interview notes taken by all law enforcement agents working in this case (including any state and federal law enforcement officers and agents), and their respective representatives, employees and designees, during the course of the investigation of this case, as well as any and all rough notes, work papers, drafts, and document compilations produced by all lab technicians and experts, their respective representatives, employees and designees during the course of any analysis relating to this case.

Respectfully Submitted,

s/ *Amy Sirignano, Esq.*
Amy Sirignano
Law Office of Amy Sirignano, PC
5901J Wyoming Blvd. NE, #250
Albuquerque, NM 87109
505-242-2770
505-242-2774 facsimile
amy@abqnmlaw.com


s/ *Christopher W. Adams*
Christopher W Adams
102 Broad Street
Suite C
Charleston, SC 29401
(843) 577-2153

(877) 883-9114
adams.c@me.com

*Counsel for Defendant Christopher Garcia*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of this pleading was served on opposing counsel via the CM/ECF system on this 28th day of February, 2017.

  /s                             
Amy Sirignano, Esq.